JEFFREY D. GOLDMAN (SBN 155589)
jgoldman@loeb.com
KAREN R. THORLAND (SBN 172092)
kthorland@loeb.com
DONALD A. MILLER (SBN 228753)
rcatalano@loeb.com
LOEB & LOEB LLP
10100 Santa Monica Boulevard, Suite 2200
Los Angeles, California 90067-4120
Tel: 310-282-2000/Fax: 310-282-2200

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARISTA RECORDS LLC, a Delaware limited liability company; ATLANTIC RECORDING CORPORATION, a Delaware corporation; BMG MUSIC, a New York general partnership; CAPITOL RECORDS, LLC, a Delaware limited liability company; CAROLINE RECORDS, INC., a New York corporation; ELEKTRA ENTERTAINMENT GROUP INC., a Delaware corporation, EMI CHRISTIAN MUSIC GROUP, INC., a California corporation; LAFACE RECORDS LLC, a Delaware limited liability company; PRIORITY RECORDS, LLC, a Delaware limited liability company; SONY BMG MUSIC ENTERTAINMENT, a Delaware partnership; UMG RECORDINGS, INC., a Delaware corporation; VIRGIN RECORDS AMERICA, INC., a California corporation; WARNER BROS. RECORDS INC., a Delaware corporation; ZOMBA RECORDINGS, LLC, a Delaware limited liability company, <br><br>                Plaintiffs, <br><br>         v. <br><br> MYXER INC., f/k/a mVISIBLE TECHNOLOGIES, INC.; MICHAEL "MYK" WILLIS, an individual; SCOTT KINNEAR, an individual, and RON HARRIS, an individual, <br><br>                Defendants. | Case No. CV 08-03935 GAF (JCx) <br><br> The Honorable Gary A. Feess <br><br> **PLAINTIFFS' MEMORANDUM RE ISSUES TO BE ADDRESSED AT OCTOBER 30, 2009 DISCOVERY HEARING** <br><br> Date: October 30, 2009 <br> Time: 3:00 p.m. <br> Ctrm: 740 <br><br> Disc. Cutoff:    November 16, 2009 <br> Pretrial Conf.:  January 4, 2010 <br> Trial Date:     February 2, 2010 |

**Preliminary Statement**

Plaintiffs file this brief out of an abundance of caution, and the need for the Court to consider it depends (at least in large part) on the outcome of Plaintiffs' motion for evidentiary sanctions currently set for hearing on October 23. The document requests, interrogatories, and requests for admission at issue on this motion were propounded in July and August, in a "belt-and-suspenders" effort to ensure that Myxer could not evade production of certain specific documents and information already responsive to Plaintiffs' first set of document requests, but as yet unproduced. When this Court ordered Myxer on July 31 to fully and completely comply with the Court's April 28 Order, Plaintiffs anticipated receiving such documents and information by mid-August, as ordered by the Court, but as the Court is aware from the Motion for Evidentiary Sanctions, this did not occur. The remedies sought by Plaintiffs in the motion for evidentiary sanctions, if granted by the Court, would largely render moot the discovery requests presented on this Memorandum, but as discovery is nearing its end in this case, and Plaintiffs do not know the outcome of the Motion for Evidentiary Sanctions, Plaintiffs have no choice but to present these issues to the Court at this time. Depending on the outcome of the Court's ruling on the Motion for Evidentiary Sanctions, the issues presented herein can be narrowed or eliminated.

In the event that the Court denies Plaintiffs' Motion for Evidentiary Sanctions in whole or in part, Plaintiffs request that Myxer be ordered to respond fully and completely to the specific discovery requests identified below. Myxer has refused to provide simple yet undeniably relevant discovery by providing boilerplate, nonsensical objections and evasive responses to Plaintiffs' requests, including Plaintiffs' Fourth Set of Requests for Production of Documents and Tangible Things; Fifth Set of Requests for Production of Documents and Tangible Things; Plaintiffs' Second Set of Requests for Admission; and plaintiff Caroline Records'

Special Interrogatories.[1]  Myxer should be ordered to produce documents in response to the Fourth and Fifth Set of Requests for Production and to provide full, complete, substantive, and non-evasive responses to the Requests for Admission and Interrogatories.

## Argument

**A.  Myxer Should Be Compelled to Produce Documents in Response to Plaintiffs' Fourth Set of Requests for Production of Documents**

On July 24, 2008, Plaintiffs propounded their Fourth Set of Requests for Production [Nos. 81-103] (the "Fourth Set").  Declaration of Donald A. Miller ("Miller Decl.") ¶ 2, Ex A.  The Fourth Set included the following requests:

**Request No. 82**:  All DOCUMENTS that constitute, embody, reflect, or refer to the "table of downloads" referred to on page 6 of "Myxer's Inc.'s Memorandum re Issues to be Addressed at July 31, 2009 Discovery Hearing," dated July 22, 2009.

**Request No. 83**:  All DOCUMENTS that constitute, embody, reflect, or refer to the information on the "full audit list" – regardless of the document's formal or actual name or the manner in which individuals commonly refer to it – as Myk Willis used that term in his August 1, 2007, email to Gina Balcom, Steve Spiro, and Scott Kinnear number-stamped MYX 2053310.

**Request No. 84**:  All DOCUMENTS that constitute, embody, reflect, or refer to data collected as a result of MYXER's efforts to "keep[] track of what content a person downloads," as Myk Willis stated in his August 1, 2007, email to Gina Balcom, Steve Spiro, and Scott Kinnear number-stamped MYX 2053310.

---

[1]  Caroline Records has since dismissed its claims, but Fed. R. Civ. P. 37 does not restrict discovery motions to interrogatories propounded by the party making the motion.  See Fed. R. Civ. P. 37(a)(3)(B)(iii) (discovery motion may be made if "a party fails to answer an interrogatory submitted under Rule 33").  By contrast, when Congress chose to impose such a limitation, it did so explicitly, such as in Rule 36 concerning requests for admission.  See Fed. R. Civ. P. 36(a)(6) ("***The requesting party*** may move to determine the sufficiency of an answer or objection.") (emphasis added).

**Request No. 85**: All DOCUMENTS that constitute, embody, reflect, or refer to the following "Tables" or reports (from their inception to present, including all versions and all columns in each version) referred to by Wayne Kemble in his July 17, 2007 email to "dev" sent at or about 6:05 p.m.:
    (a)    "SongTable"
    (b)    "ProfileTable" (including all columns)
    (c)    "ContentTable"
    (d)    "UploadTable"
    (e)    "RingtoneTable"
    (f)    "UserTable"
    (g)    "RatingTable"
    (h)    "TagTable"
    (i)    "CommentTable"
    (j)    "AdministratorTable"
    (k)    "UnknownUserAgentTable"
    (l)    "AdWapTable"
    (m)    "EmailBlackListTable"
    (n)    "ProductSaleTable"
    (o)    "SegmentTable"
    (p)    "VerificationTable"
    (q)    "CarrierTable"
    (r)    "FanTable"
    (s)    "SmsAuditTable"
    (t)    "DownloadTable"
    (u)    "HotTopicTable"

**Request No. 86**: All DOCUMENTS that constitute, embody, reflect, or refer to the "SongRecord" (from its inception to present, including all versions) referred to by Scott Clark in his May 28, 2008 email to Chris Wilson sent at or about 18:07:04 EDT.

**Request No. 87**: All DOCUMENTS that constitute, embody, reflect or evidence any ringtone that has ever been downloaded or sent to a cell phone from or by use of any website MYXER owns, operates or controls.

**Request No. 88**: All DOCUMENTS that reflect any of the following information related to any ringtone that has ever been downloaded or sent to a cell phone from or by use of any website MYXER owns, operates or controls: (1) the name of the ringtone file; (2) the tags associated with the ringtone file; (3) any data associated

with the ringtone file that enables a person to search for the ringtone by use of MYXER's or any other search engine; (4) the size of the ringtone file; (5) the URL where the file or ringtone is or was located; (6) the name of the song; (7) the name of the artist that performed on the song; (8) the username and/or identity of the Myxer user who downloaded or sent the song; (9) the date the ringtone was downloaded or sent to a cell phone; (10) the identity of the device to which the ringtone was downloaded or sent; and (11) the username and/or identity of the Myxer user who posted or uploaded the song to the website MYXER owns, operates or controls.

**Request No. 89**: All DOCUMENTS that embody or reflect any of the following information related to any ringtone embodying any sound recording (or any portion thereof) owned by any of the plaintiffs that has ever been downloaded or sent to a cell phone from or by use of any website MYXER owns, operates or controls: (1) the name of the ringtone file; (2) the tags associated with the ringtone file; (3) any data associated with the ringtone file that enables a person to search for the ringtone by use of MYXER's or any other search engine; (4) the size of the ringtone file; (5) the URL where the file or ringtone is or was located; (6) the name of the song; (7) the name of the artist that performed on the song; (8) the username and/or identity of the Myxer user who downloaded or sent the song; (9) the date the ringtone was downloaded or sent to a cell phone; (10) the identity of the device to which the ringtone was downloaded or sent; and (11) the username and/or identity of the Myxer user who posted or uploaded the song to the website MYXER owns, operates or controls.

**Request No. 90**: All DOCUMENTS that embody or reflect any of the following information related to any ringtone embodying any sound recording (or any portion thereof) at issue in this case that has ever been downloaded or sent to a cell phone from or by use of any website MYXER owns, operates or controls: (1) the name of the ringtone file; (2) the tags associated with the ringtone file; (3) any data associated with the ringtone file that enables a person to search for the ringtone by use of MYXER's or any other search engine; (4) the size of the ringtone file; (5) the URL where the file or ringtone is or was located; (6) the name of the song; (7) the name of the artist that performed on the song; (8) the username and/or identity of the Myxer user who downloaded or sent the song; (9) the date the ringtone was downloaded or sent to a cell phone; (10) the identity of the device to which the ringtone was downloaded or sent; and (11) the username

and/or identity of the Myxer user who posted or uploaded the song to the website MYXER owns, operates or controls.

**Request No. 91**: All DOCUMENTS that embody or reflect any of the following information related to any ringtone of any sound recording (or any portion thereof) listed in Schedule A of the Complaint that has ever been downloaded or sent to a cell phone from or by use of any website MYXER owns, operates or controls: (1) the name of the ringtone file; (2) the tags associated with the ringtone file; (3) any data associated with the ringtone file that enables a person to search for the ringtone by use of MYXER's or any other search engine; (4) the size of the ringtone file; (5) the URL where the file or ringtone is or was located; (6) the name of the song; (7) the name of the artist that performed on the song; (8) the username and/or identity of the Myxer user who downloaded or sent the song; (9) the date the ringtone was downloaded or sent to a cell phone; (10) the identity of the device to which the ringtone was downloaded or sent; and (11) the username and/or identity of the Myxer user who posted or uploaded the song to the website MYXER owns, operates or controls.

**Request No. 92**: All DOCUMENTS that constitute, embody, reflect, or refer to any videos uploaded by MYXER to www.youtube.com, including but not limited to the videos themselves, raw footage or material, edited footage or material, unused footage or material, and outtakes, and DOCUMENTS reflecting any discussion of such videos.

**Request No. 93**: All DOCUMENTS that constitute, embody, or reflect any data or information contained at any time on any version or draft of the Excel spreadsheet MYXER produced in this lawsuit on or about April 5, 2009, and number-stamped MYX 007, which was removed, hidden, deleted, or otherwise made inaccessible to Plaintiffs prior to its production of MYX 007 on or about April 5, 2009.

**Request No. 94**: All DOCUMENTS that constitute, embody, or reflect the column headings for the Excel spreadsheet MYXER produced in this lawsuit on or about April 5, 2009, and number-stamped MYX 007.

Id. Myxer responded to each of these document requests with boilerplate, obstructive, and meritless objections. Id. ¶ 2, Ex. B. As an example, consider the following: In the Court's Order dated July 17 (Docket No. 74), the Court required

Myxer's counsel to inquire of Myxer about a document requested by Plaintiffs in a prior discovery brief, called the "full audit list," referenced by CEO Myk Willis in an email. Id., Ex. H ("We've been keeping a ***full audit list*** of every download since the beginning of time . . . .") (emphasis added).[2] In response to the Court's Order, Myxer stated evasively, "No documents exists entitled 'Full Audit List.' There is a table of downloads as titled by the user or the artist. The actual document does not appear to be responsive to any request, however the titles on the table are encompassed in other documents which have been produced." Myxer's Inc.'s Memo re Issues to be Addressed at July 31, 2009 Discovery Hearing, dated July 22, 2009 [Docket No. 161] at 6. Based on this representation, Plaintiffs propounded Request No. 82, ***quoting exactly the language from Myxer's July 22 brief***:

> All DOCUMENTS that constitute, embody, reflect, or refer to the "table of downloads" referred to on page 6 of "Myxer's Inc.'s Memorandum re Issues to be Addressed at July 31, 2009 Discovery Hearing," dated July 22, 2009.

Miller Decl., Ex. A (Request No. 82). Yet, Myxer still responded with boilerplate objections, including, incredibly, "on the grounds that it is vague and ambiguous." Id., Ex. B at 7. Similarly, Plaintiffs also propounded these requests, this time quoting exactly from the Myk Willis email (see fn. 2):

> All DOCUMENTS that constitute, embody, reflect, or refer to the information on the "full audit list" – regardless of the document's formal or actual name or the manner in which individuals commonly refer to it – as Myk Willis used that term in his August 1, 2007, email to Gina Balcom, Steve Spiro, and Scott Kinnear number-stamped MYX 2053310.

---

[2] The Myk Willis email states, in pertinent part: "We're going to have to be creative to get truly valuable behavioral targeting. For example, ***keeping track of what content a person downloads*** is going to be far more valuable than forcing them to answer the question 'what is your favorite music genre?' in the long run." Miller Decl., Ex. H (emphasis added). We've been keeping a full audit list every download since the beginning of time to aid in thise."

> All DOCUMENTS that constitute, embody, reflect, or refer to data collected as a result of MYXER's efforts to "keep[] track of what content a person downloads," as Myk Willis stated in his August 1, 2007, email to Gina Balcom, Steve Spiro, and Scott Kinnear number-stamped MYX 2053310.

Id., Ex. A (Request Nos. 83 and 84). Again, Myxer responded with boilerplate objections and refused to produce documents.

As the Court is aware in connection with Plaintiffs' evidentiary sanctions motion, the documents responsive to Plaintiffs' fourth set of requests for production are also responsive to Plaintiffs' first set of requests for production, and Myxer should have produced such documents long ago as required by this Court's April 28 and July 31 Orders. However, if, for whatever reason, the Court finds that these documents were somehow not encompassed within and responsive to the first set, then the Court should now compel Myxer's production of these documents. They are clearly relevant to Plaintiffs' claims that Myxer has reproduced and downloaded, and facilitated the download of, Plaintiffs' copyrighted sound recordings in violation of Plaintiffs' exclusive distribution right, 17 U.S.C. § 106(3); that Myxer has actual or constructive knowledge of Plaintiffs' works and its users' activities, which is relevant to the doctrine of contributory copyright infringement and Myxer's disentitlement to DMCA safe harbor; and that Myxer has induced infringement through its advertisements, promotional materials, and other communications with users or potential users of its website.

**B.     Myxer Should Be Compelled to Produce Documents in Response to Plaintiffs' Fifth Set of Requests for Production of Documents**

Myxer's responses to Plaintiffs' Fifth Set of Requests for Production [104-112] were just as improper. In Request No. 104, Plaintiffs requested the (a) "Content Take Down Table," (b) Producer Table, (c) the "Segment Table," (d) the "label BlackList," (e) the Myxer "internal Wiki," (f) "Downloads by producer," (g) the "RingtoneAuditTable," (h) the SmsKeywordTable," and (i) the Download

1  Success Summary." Id., Ex. C.  For each of the items requested in Request No. 104,
2  Plaintiffs also referenced – and even attached to the requests – a document produced
3  by Myxer that discusses and demonstrates the relevance of the particular item
4  requested.  See, e.g., id., Exhibit 1 [Myxer internal email re "ContentTakeDown
5  Table" – Request No. 104(a): appears to contain items taken down as a result of a
6  DMCA request]; Exhibit 4 [Myxer internal email re "label BlackList" – Request No.
7  104(d): "When an artist shares content, we check if the label that is returned from
8  Audible [Magic] is in our 'labelBlackList'"]; Exhibit 8 [Myxer internal email re
9  "SmsKeywordTable" – Request No. 104(h): appears to contain key words that
10 facilitate ads sent to cell phone, via SMS messaging, during the downloading
11 process].  Myxer responded with boilerplate objections.  Id., Ex. D.

12      Similarly, Myxer responded with boilerplate objections to the following
13 requests within the Fifth Set:  No. 105 ("the 5,000 ringtones files most frequently
14 downloaded"), even though Bill Madden testified that such a document could be
15 produced (Madden Depo. [Miller Decl., Ex. G] at 265:23-266:4); No. 106 (Myxer's
16 "'Stay Down List' referred to by William Madden in his July 28 deposition"); No.
17 107 ("any report or data generated from YOUR use of Audible Magic technology");
18 No. 110 ("All DOCUMENTS that reflect or evidence all of the ringtones (identified
19 by Content ID) that have been downloaded by Myk Willis from any website
20 operated or controlled by YOU."); No. 111 ("All DOCUMENTS that reflect or
21 evidence all of the ringtones (identified by Content ID) that have been downloaded
22 by Scott Kinnear from any website operated or controlled by YOU."); No. 112
23 ("YOUR 'Production Database' – referred to by William Madden in his July 28,
24 2009, deposition (the pertinent excerpt of which is attached hereto as Exhibit 11) –
25 in native format.").  Miller Decl., Ex. C.  Again, each request was met with
26 boilerplate objections, and Myxer has refused to produce documents responsive the
27 requests.  Id., Ex. D.  Myxer should be compelled to do so.  Request No. 107 is of
28 particular importance, because the reports that Myxer received from Audible Magic

would expressly inform Myxer that Plaintiffs own the copyrights in their works and that Plaintiffs do not authorize Myxer to make them available and demand that they be blocked – critically important evidence of Myxer's knowledge of infringement.

**C.  Myxer Should Be Compelled To Provide Full, Complete, and Non-Evasive Responses to Plaintiffs' Requests for Admission and Corresponding Interrogatories**

From March to May 2009, Myxer produced six hard drives on six separate occasions containing collectively over 1.4 million music files. Miller Decl ¶ 3. Along with the hard drives, Myxer produced an Excel file, called the "Myxer Song Data Spreadsheet" (also referred to as the "Song List"), presumably containing data regarding the 1.4 million music files. Id. Plaintiffs' Requests for Admissions Nos. 309, 310, and 311 seek confirmation of precisely what these materials represent. Myxer responded evasively. For example, in RFA No. 309, Plaintiffs requested that Myxer "[a]dmit that the hard drives produced by MYXER in this lawsuit and number stamped MYX004, MYX005, MYX006, MYX008, MYX011 and MYX012, *were copied from hard drives owned or controlled by MYXER* between March and May 2009, inclusive." Id., Ex. E. (emphasis added). Myxer responded: "Myxer admits that it produced hard drives number stamped MYX004, MYX005, MYX006, MYX008, MYX011 and MYX012 between March and May 2009." Id. Obviously, Plaintiffs already knew that; this response is inherently evasive. Myxer responded *exactly* the same way to RFA No. 310 and RFA No. 311, in which Plaintiffs requested further information regarding the hard drives and the Song Data Spreadsheet, as Myxer did in RFA No. 309 – admitting only that the hard drives were produced between March and May 2009. Id.

In RFA Nos. 312, 313, and 314, Plaintiffs sought other information relating to the Hard Drives and Song List. Again, Myxer's response – which was the same for each request – was evasive. For example, in RFA No. 313, Plaintiffs requested:

> Admit that MYXER has not produced in this lawsuit any documents that evidence or reflect when any of the MP3 files contained on the

hard drives number stamped MYX004, MYX005, MYX006, MYX008, MYX011 and MYX012 was first copied to a computer server owned or controlled by MYXER and made accessible to the public through any website owned or controlled by MYXER.

Id. Myxer responded to RFA No. 313, and to RFA 312 and 314, exactly the same: "Myxer is unable to respond to this request as drafted." Id. Likewise, in the interrogatories corresponding to RFA Nos. 309 to 314 (i.e., Plaintiff Caroline Records Interrogatory Nos. 4 to 9) – e.g., "If your response to Request for Admission No. [309-314] is anything other than an unqualified admission, state all facts that support your response" – Myxer provided only boilerplate objections to every interrogatory. Id., Ex. F.

Finally, Plaintiff Caroline Records propounded three interrogatories [Nos. 1-3] requesting information related to the MP3 files on the hard drives that Myxer produced and the data contained on the Song List (Nos. 1-3). Id.[3] Again, each interrogatory was met with boilerplate objections.

## Conclusion

This Court should compel Myxer to respond to Plaintiffs' Fourth Set of Requests for Production and Plaintiffs' Fifth Set of Requests for Production, Plaintiffs' Requests for Admission, and the Interrogatories.

Dated:  October 21, 2009          LOEB & LOEB LLP

                                  By:/s/ Jeffrey D. Goldman
                                     Jeffrey D. Goldman
                                     Attorneys for Plaintiffs

---

[3]   For example, the Excel file does not contain any column headings, and is missing hundreds of thousands of rows of data.  Miller Decl. ¶ 3.