1  Edward Gartenberg (State Bar No. 102693)
   Kristin Sciarra (State Bar No. 236247)
2  GARTENBERG GELFAND WASSON & SELDEN LLP
   801 South Figueroa Street, Suite 2170
3  Los Angeles, California 90017
   Telephone: (213) 542-2100
4  Facsimile: (213) 542-2101
   E-mail:       egartenberg@ggwslaw.com
5                ksciarra@ggwslaw.com

6  Attorneys for Defendant and Movant
   MYXER, INC.

7

8                    UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11 | ARISTA RECORDS, LLC, a Delaware     | Case No.: CV 08-03935 GAF(JCx)
12 | limited liability company; *et al.*, |
                                          |
13 |          Plaintiffs,                | **DEFENDANT MYXER, INC.'S SUPPLEMENTAL MEMORANDUM IN REPLY TO VERIZON'S JOINT STIPULATION**
14 |          vs.                        |
                                          | **[Filed Concurrently with the Declaration of Kristin Sciarra filed in Support of Myxer's Memorandum in Reply]**
15 | MYXER INC., f/k/a mVISIBLE          |
   | TECHNOLOGIES, INC. *et al.*,        |
16 |                                      |
   |          Defendants.                | Date:  April 27, 2010
17 |                                      | Time: 9:30 a.m.
18 |                                      | Judge: Hon. Jacqueline Chooljian
19 |                                      | Courtroom: 20 – 3rd Floor of Spring
20 |                                      | Street Courthouse
21 |                                      | Trial date: None currently set

22

23

24

25

26

27

28

24357

1 **MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.    INTRODUCTION**

3          Myxer Inc. ("Myxer") respectfully requests that this Court conduct an *in*

4 *camera* review of documents responsive to three privilege log entries, which totals

5 a review of four pages.  The sole privilege Cellco Partnership d/b/a Verizon

6 Wireless ("Verizon") asserts in its portion of the Joint Stipulation is the work

7 product privilege.[1]  Verizon has used its manufactured work product privilege claim

8 as an attempt to shield from discovery facts that go to the heart of this matter, are

9 admittedly relevant (Declaration of Kristin Sciarra "Sciarra Decl." ¶ 4), and are not

10 protected by the work product doctrine.  Not only were the emails at issue by and

11 among *non-attorneys*, because Verizon is not and has never been a party to the

12 instant litigation, there was no genuine legal threat against Verizon whatsoever.

13 Thus, Myxer has a reasonable and good faith belief that an *in camera* review of the

14 materials will confirm that the work product privilege does not apply.  See In re:

15 Grand Jury Investigation v. The Corporation, 974 F. 2d 1068, 1071 (9th Cir. 1992).

16 The communications at issue are plainly relevant and discoverable, and Myxer

17 requests that the Court conduct an *in camera* review of these communications and

18 order that these and all related responses be produced.

19 **II.    PROCEDURAL BACKGROUND**

20          During meet and confer efforts, Verizon's counsel agreed to show Myxer's

21 counsel a portion of one e-mail withheld and identified in Verizon's privilege log

22 entries 21, 22, or 23.  Sciarra Decl. ¶ 4.  Verizon's counsel explained that a certain

23 portion of a communication was the sole reason for withholding all of the e-mails

24 identified in privilege log entries 21, 22, and 23.[2]  Sciarra Decl. ¶ 4.  Importantly,

25 prior to doing this, Verizon's counsel conditioned its showing Myxer's counsel the

26

---

27 [1] Apparently Verizon has abandoned any claim of attorney-client privilege (contrary
to its representations in its privilege log).

28 [2] Verizon's counsel did not allow Myxer's counsel to review these documents in
their entirety.  Sciarra Decl. ¶ 4.

GARTENBERG
GELFAND
WASSON &
SELDEN LLP

DEFENDANT MYXER, INC.'S SUPPLEMENTAL REPLY MEMORANDUM

1  communications upon Myxer's agreement that it would not use the information

2  revealed in the communications in any way, whether in litigation or otherwise.

3  Sciarra Decl. ¶ 5   "**This would include (for example and without limitation)**

4  **disclosing the contents of the privileged communications in any filings before**

5  **the Court.**"   Sciarra Decl. ¶ 6 (emphasis added).  *Now, in its portion of the Joint*

6  *Stipulation – Verizon criticizes Myxer for complying with the very agreement it*

7  *dictated.*  While Verizon argues that Myxer fails to discuss facts other than the fact

8  that no attorney was included on the privilege log entries for the documents to

9  support its motion, *this fact is the only fact that Verizon's non-disclosure condition*

10  *allowed Myxer to address.*  See Joint Stipulation, 9:15-18.  Further, while requiring

11  that Myxer refrain from any mention of the "privileged" communications, Verizon

12  went ahead and set forth in its papers facts helpful only to its side of the story.

13      In fact, the first time that Verizon produced a redacted version of the

14  documents at issue and identified in entries 21, 22, and 23 of its privilege log was

15  on March 23, 2010 – *at the same time it provided its portion of the Joint Stipulation*

16  which was filed on March 25, 2010.  Sciarra Decl. ¶ 8.  Also at that time, Verizon

17  advised Myxer that it could now comment on the "unredacted portions of these

18  documents."  Sciarra Decl. ¶ 8.  By then Myxer had prepared its portion of the Joint

19  Stipulation, and making any changes at that point addressing the unredacted

20  portions of the e-mails at issue would not only be improper under Local Rule 37, it

21  would pose a further delay to the instant motion.  Thus, Myxer addresses these

22  issues in this supplemental brief.

23  **III.   THE COURT SHOULD REVIEW *IN CAMERA* THE E-MAILS**

24  **IDENTIFIED IN ENTRIES 21, 22 AND 23 OF VERIZON'S**

25  **PRIVILEGE LOG**

26  **A. There is a Reasonable Belief that the Work Product Privilege Does**
   **Not Apply**

27

28

GARTENBERG
GELFAND
WASSON &
SELDEN LLP

-2-

24357

DEFENDANT MYXER, INC.'S SUPPLEMENTAL REPLY MEMORANDUM

1      The work product protection is designed to protect the work product of an

2  adversary, not a third party who is not anticipated to be a party to the litigation.

3  Independent Petrochemical Corp. v. Aetna Cas. & Sur. Co., 117 F.R.D. 292, 298

4  (D.D.C. 1987) (court refused to extend work product protection to audit letters

5  prepared by an attorney where Magistrate Judge's *in camera* examination revealed

6  that they were not prepared to assist the company in present or reasonably

7  anticipated litigation).  Under either the "primary purpose" test or the "because of"

8  test cited by Verizon in its papers, the e-mails at issue are not protected by the work

9  production privilege because it cannot fairly be said that the "document was created

10  because of anticipated litigation, and would not have been created in substantially

11  similar form but for the prospect of that litigation."  In re Grand Jury Subpoena, 357

12  F.3d 900, 908 (9th Cir. 2003).

13      Verizon is not and never has been an adversary of Myxer in this litigation

14  (Sciarra Decl. ¶ 11).[3]  The work product protection is not intended to broadly

15  protect communication between non-attorneys even if an attorney has generalized

16  concerns about non-threatened litigation.  If that were the standard, almost any

17  internal business communication could be deemed privileged on the theory that a

18  corporation's counsel commonly has concerns about possible litigation.

19      Notably, Mr. Ashby's declaration does <u>not</u> state that he advised Ed Ruth (the

20  author of Exhibit D to the Declaration of Kristin Sciarra, pages 222, 223, an email

21  from Mr. Ruth, a non-attorney to three other non-attorneys) that Mr. Ashby was

22  directing Mr. Ruth to do an investigation because of actual or threatened litigation.

23  To the contrary the redacted email suggests the opposite—it is Mr. Ruth that is

24  raising the concern about being pulled into litigation.  See Sciarra Decl. ¶ 10, Ex. D.

25

26

[3]  Verizon's reference to "comments" submitted in connection with a pending FCC
27  "matter" do not amount to litigation between Myxer and Verizon.  Moreover,
   Verizon fails to establish that the FCC "matter" has anything to do with the
28  documents at issue here.

GARTENBERG
GELFAND
WASSON &
SELDEN LLP

-3-                                      24357

DEFENDANT MYXER, INC.'S SUPPLEMENTAL REPLY MEMORANDUM

1    The litigation between Myxer and UMG had already begun and Verizon's

2   investigations did not contribute to, or assist in the litigation.  It appears that

3   Verizon was reviewing issues separate and apart from the litigation, for its own

4   business purposes and relations with Plaintiff UMG, and thus is precisely the type

5   of communication that Myxer is searching for to support its copyright misuse

6   defense against Plaintiff UMG.

7    Here, Verizon's counsel Brian Ashby's statement that he, "became concerned

8   that the copyright holders, or even Myxer itself, might later assert claims against

9   Verizon in litigation," does <u>not</u> rise to the level of anticipated litigation as required

10  to extend work product protection to non-attorney communications.  Mr. Ashby

11  also fails to state any reason for this concern.  Verizon further fails to set forth any

12  threat made by either plaintiff record labels or Myxer.  Moreover, Verizon provides

13  no legal theory or potential claim that could realistically be asserted.  One counsel's

14  unfounded and unsupported suspicion cannot create a legal threat that simply never

15  existed.  Thus, even if the underlying communications provide facts helpful to the

16  investigation by Verizon's lawyer – there was no real or imminent threat of

17  litigation prompting this investigation.  Sciarra Decl. ¶ 11.

18   Verizon seeks to shield facts from Myxer (*e.g.*, the responses from Verizon

19  employees) that go to the heart of this matter, are admittedly relevant (Sciarra Decl.

20  ¶ 4), and are not protected by the work product doctrine.  Factual responses from

21  Verizon employees are not shielded from discovery.  <u>See</u> <u>Casson Constr. Co. v.</u>

22  <u>Armco Steel Corp</u>., 91 F.R.D. 376 (D. Kan. 1980) (work product protection does

23  not shield from discovery facts that the attorney has learned, or the existence of

24  documents, even though the documents in which the attorney may have

25  communicated that knowledge may be protected); <u>Koch Materials Co. v. Shore</u>

26  <u>Slurry Seal, Inc.</u>, 208 F.R.D. 109, 121 (D.J.N. 2002) ("The plaintiff may choose in

27  what form it produces relevant factual information.  But, it cannot withhold relevant

28  information on the basis of attorney work product.").  Indeed, courts have declined

GARTENBERG
GELFAND
WASSON &
SELDEN LLP

-4-

24357

DEFENDANT MYXER, INC.'S SUPPLEMENTAL REPLY MEMORANDUM

1   to extend work product protection to attachments, supporting documents to an

2   attorney memorandum.  <u>Willingham v. Ashcroft</u>, 228 F.R.D. 1, 7 (D.D.C. 2005)

3   (noting that "if attaching a non-privileged document to a privileged one would

4   automatically prevent it from being discoverable, the liberal discovery

5   contemplated by the federal rules would be obviated.").

6           Verizon has no stake in the copyrights at issue in this case, so it does not

7   make sense that they would be a party on either side of the instant case.  Even if

8   they were seriously y concerned the labels were going to sue them based on Myxer's

9   activities, they can't use that to shield indisputably relevant factual data about

10  Myxer's alleged infringing conduct.

### B. The Court Should Exercise Its Discretion to Review the Documents Because an *In Camera* Review is Appropriate

13          The Court should review the document at issue because the request is limited,

14  the documents are directly relevant to the copyright misuse defense which could be

15  dispositive for Myxer, and because based on an analysis of the documents at issue,

16  the work product privilege does not apply.

## IV.   VERIZON'S REQUEST FOR FEES SHOULD BE DENIED

18          Both Verizon and Myxer have engaged in extensive meet and confer efforts

19  and they have resolved nearly every issue.  Only this one narrow issue with

20  potentially dispositive implications remains.  For the reasons provided above, at a

21  minimum, there is substantial justification for this motion.

## V.   CONCLUSION

23          For the reasons provided above, Myxer requests that this Court grant an *in*

24  *camera* review of the documents.

Dated: April 13, 2010      GARTENBERG GELFAND WASSON & SELDEN LLP

                           By:  _____
                                Edward Gartenberg
                                Kristin Sciarra
                                Attorneys for Defendant MYXER INC.

DEFENDANT MYXER, INC.'S SUPPLEMENTAL REPLY MEMORANDUM