JEFFER MANGELS BUTLER & MARMARO LLP
JEFFREY D. GOLDMAN (Bar No. 155589),
JGoldman@jmbm.com
SUSAN ALLISON (Bar No. 133448),
SAllison@jmbm.com
RYAN S. MAUCK (Bar No. 223173),
RMauck@jmbm.com
1900 Avenue of the Stars, Seventh Floor
Los Angeles, California  90067-4308
Telephone:   (310) 203-8080
Facsimile:    (310) 203-0567

Attorneys for Plaintiff UMG Recordings, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ARISTA RECORDS LLC, et al.<br><br>Plaintiffs,<br><br>v.<br><br>MYXER INC., f/k/a mVISIBLE TECHNOLOGIES, INC., et al.<br><br>Defendants. | CASE NO.  CV 08-03935 GAF (JCx)<br><br>The Honorable Gary A. Feess<br><br>**SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFF UMG RECORDINGS, INC.'S MOTION FOR SUMMARY JUDGMENT ON LIABILITY OR ALTERNATIVELY, A DETERMINATION OF MATERIAL FACTS NOT GENUINELY AT ISSUE**<br><br>Date:         August 23, 2010<br>Time:        9:30 a.m |

**Preliminary Statement**

The plaintiffs in this matter other than UMG Recordings, Inc. ("Plaintiff") have resolved their claims against Defendants and dismissals have been entered. Accordingly, Undisputed Facts 4-7 in Plaintiffs' Statements of Undisputed Facts ("SUF") and the Declarations of Wade Leak, Silda Palerm, and Supplemental Declaration of Silda Palerm (concerning ownership of works by former Plaintiffs) are no longer relevant to Plaintiff's claims; and references to 733 infringed works at issue (Undisputed Facts 8 and 9, Conclusions of Law 3, 4, 11, and 12, and Plaintiffs' Memorandum of Points and Authorities at 4-6 and 40) should be amended to refer to 245 infringed works, rather than 733.

Plaintiff submits this Supplemental Memorandum concerning the recent decision in Columbia Pictures Industries, Inc. v. Fung, No. CV 06-5578 SVW (JCx), 2009 WL 6355911 (C.D. Cal. Dec. 21, 2009), which was decided after briefing on Plaintiff's summary judgment motion was completed and which upheld and applied many of the principles cited in Plaintiff's motion.

**Argument**

Columbia Pictures involved a claim in this District by various "entertainment and popular media" companies against defendants that "operated a file-sharing service as well as related computer servers as a part of an ongoing file-sharing network that profits from alleged copyright infringement by its users." Id. at *1. Plaintiffs moved for summary judgment on liability based on "theories of inducement, contributory infringement, and vicarious infringement." Id. (Unlike in this case, in which Defendants copied the infringing works onto, and distributed the infringing works from, their own servers, the alleged liability in Columbia Pictures was entirely secondary in nature.) The defendants argued they were protected by the DMCA safe harbor of 17 U.S.C. § 512(d), which in all material respects is identical to the Section 512(c) safe harbor at issue in this case. The court rejected the defense for many reasons that are equally applicable here.

### A. **Columbia Pictures** Correctly Recognizes That The DMCA Is An Affirmative Defense Which Essentially Restates The Common-Law Doctrines Of Contributory And Vicarious Infringement

At the broadest level, the court in Columbia Pictures recognized that the DMCA's "statutory safe harbors are based on passive good faith conduct aimed at operating a legitimate internet business." Id. at *18. As the overwhelming evidence in this case shows, Defendants' operation of their online pirate ringtone bazaar is not passive, is not in good faith, and is not legitimate. The Columbia Pictures court also recognized that the DMCA is an affirmative defense on which the defendant bears the burden of proof (2009 WL 6355911, *15-*16), that its requirements are "conjunctive," i.e., the defendant must satisfy *each* of the three prongs of the safe harbor in order to qualify for protection (id. *16 & n.27), and that

> [i]n many ways, the Digital Millennium Copyright Act is simply a restatement of the legal standards establishing secondary copyright infringement… The two sets of rules do not entirely overlap, but this framework is helpful for understanding the Act's statutory text and structure.

Id. at *15.

### B. **Columbia Pictures** Correctly Interprets And Applies The DMCA's Standard For Actual And Constructive ("Red Flag") Knowledge

The Columbia Pictures court correctly recognized that the DMCA's standard for knowledge is essentially a codification of the common law standard for actual or constructive knowledge – that the defendant "does not know … *or have reason to know* … of infringing activities, or does not remove infringing materials upon receipt of such knowledge." 2009 WL 6355911, *16 (emphasis added). The Court further recognized that a defendant cannot qualify for DMCA protection "if it '*turned a blind eye* to "red flags" of obvious infringement.'" Id. at *17, citing House Commerce Committee Report on the DMCA, 105th Cong., 2d Sess., Rep. 105-551,

PRINTED ON RECYCLED PAPER

JMBM Jeffer Mangels Butler & Marmaro LLP

1  Pt. 2 (1998) ("House Commerce Report") at 57 (emphasis added); see 17 U.S.C. §
2  512(c)(1)(A).  This "willful blindness" standard precludes safe harbor where, for
3  example, "the only way Defendants could have avoided knowing about their users'
4  infringement is if they engaged in an 'ostrich-like refusal to discover the extent to
5  which (their) system(s) w(ere) being used to infringe copyright." 2009 WL 6355911,
6  *18, quoting In re Aimster Copyright Litig., 334 F.3d 643, 655 (7th Cir. 2003).  "In
7  other words, to avoid actual knowledge of infringement, Defendants would have had
8  to engage in willful blindness." 2009 WL 6355911, *18.  Where this is the case –
9  and plainly it is the case with Defendants here – DMCA safe harbor is simply
10 unavailable. Id.

11     As the Columbia Pictures court correctly understood, the traditional legal
12 standards of constructive knowledge and willful blindness, as codified by the
13 DMCA,[1] are fundamentally inconsistent with the standard advocated by Defendants
14 here – that knowledge of specific infringing files, denoted by URL, is necessary
15 before liability can attach.  Indeed, the very nature of willful blindness is the
16 conscious avoidance of such specific knowledge. See also 17 U.S.C. §
17 512(c)(3)(A)(ii) (a "representative list" of infringing works is sufficient to put
18 defendant on notice of infringement).  Defendants' advocated standard contravenes

---

[1] As described in the legislative history, the DMCA's "red flag" test arguably imposes a marginally higher standard than common law constructive knowledge – but this nuanced distinction does not aid Defendants.  Common law constructive knowledge is a purely objective standard.  DMCA "red flag" knowledge introduces a modicum of subjectivity by requiring *subjective* knowledge of "facts and circumstances" that would cause a reasonable (objective) person to understand that infringing activity is taking place. See House Commerce Report at 53.

On this Motion, all of the facts and circumstances on which Plaintiff relies to prove knowledge were indisputably, subjectively known to Myxer's executives and employees.  Thus, the inquiry collapses to whether "infringing activity would have been apparent to a reasonable person" with such knowledge of its own website. Id.

- 3 -

the statutory language, legislative history, and common law.  But even if this Court were operating with a blank slate to craft its own legal standard, the one Defendants propose would make it practically impossible to ever prove or prevent massive infringement in the online context, and would upset the delicate balance between copyright ownership and the growth of the internet that Congress sought to strike in enacting the DMCA.  Under Defendants' standard, willful blindness is any internet business's ticket to unfettered, unrepentant infringement for profit.

Thus, the Columbia Pictures court recognized that – contrary to Defendants' claim that its obligation to avoid infringement is triggered only by specific knowledge of particular URLs where infringing material resides (a standard any defendant could seek to manipulate by remaining willfully blind) – DMCA safe harbor is unavailable where the defendants' actions show a ***general awareness*** "that infringing material was available on the Defendant websites." 2009 WL 6355911, *17.  The court rejected the defendants' efforts to disclaim knowledge of their own website's display of "numerous copyrighted works," which the defendants designed in a way "to automatically update to reflect user activities":  "unless Defendants somehow refused to look at their own webpages, they invariably would have [] known that (1) infringing material was likely to be available and (2) most of Defendants' users were searching for and downloading infringing material." Id.  Defendants' willful blindness mirrors that of the Columbia Pictures defendants. See, e.g., SUF 44-52, 59-81.  Indeed, Defendants do not even claim they "refused to look at their own webpages" – they admit they routinely reviewed them.  See SUF 41, 75, 79, 86-88.

In Columbia Pictures, as here, such summary judgment evidence "established that Defendants have reason to know of their users' infringing activities." 2009 WL 6355911, *17.  And because "Defendants have not satisfied their summary judgment burden by identifying facts showing that Defendants were 'not aware of facts or circumstances from which infringing activity (wa)s apparent,'" nor "introduced any evidence that they 'act(ed) expeditiously to remove, or disable access to, the

PRINTED ON RECYCLED PAPER

7155068v3

- 4 -

1 (infringing) material,' once they became aware that this infringing activity was
2 apparent … Defendants are not entitled to statutory safe harbor [.]" Id. The same is
3 true here.

### C. Columbia Pictures Correctly Interprets And Applies The DMCA's Standard For Control And Financial Benefit

Another of the "conjunctive" requirements of the DMCA is that the defendant show that it does not receive a financial benefit from infringement that it could control. 17 U.S.C. § 512(c)(1)(B). In Columbia Pictures, the court found that the defendants "failed to raise a triable issue of fact regarding th[is] second requirement for … safe harbor, because they 'receive a financial benefit directly attributable to the infringing activity,' and they have 'the right and ability to control such activity.' 2009 WL 6355911, *16 n.27. In both Columbia Pictures and here, the summary judgment evidence established that defendants "profited from their users' infringement" and "have the ability to block users from Defendants' websites…. As the Ninth Circuit explained in Napster, the 'ability to block infringers' access to a particular environment for any reason whatsoever is evidence of the right and ability to supervise.'" Id., citing A&M Records, Inc. v. Napster, Inc., 239 F.3d 1008, 1023 (9th Cir. 2001).

Even more significant on this record, there is no dispute that Defendants could have used Audible Magic or other similar services to prevent infringing ringtones from ever reaching its servers and users. SUF 46-61. Indeed, before this lawsuit was even filed, Defendants had begun running all new uploaded ringtones through Audible Magic's software (SUF 48) – but then turned a blind eye to the results (SUF 60-61) for their own financial gain. This, alone, starkly differentiates Defendants from other online defendants that have successfully invoked the DMCA. See Arista Records LLC v. Lime Group LLC, -- F. Supp. 2d --, 2010 WL 2291485, *21 (S.D.N.Y. 2010) ("Failure to utilize existing technology to create meaningful barriers

PRINTED ON RECYCLED PAPER

7155068v3

- 5 -

against infringement is a strong indicator of intent to foster infringement."), citing Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 454 F. Supp. 2d 966, 989 (C.D. Cal. 2006) (defendant "must at least make a good faith attempt to mitigate the massive infringement facilitated by its technology.").

## Conclusion

For all of the foregoing reasons and the evidence and argument previously submitted, Plaintiff is entitled to summary judgment establishing Defendants' liability for infringing each of the 245 works at issue.

Dated: July 26, 2010

JEFFER MANGELS BUTLER & MARMARO LLP
JEFFREY D. GOLDMAN
SUSAN ALLISON
RYAN S. MAUCK

By: */s/ Jeffrey D. Goldman*
    Jeffrey D. Goldman
Attorneys for Plaintiff