Erin R. Ranahan (SBN: 235286)
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone:  213-615-1700
Facsimile:   213-615-1750
Email: eranahan@winston.com

Michael S. Elkin  *(admitted pro hac vice)*
Thomas P. Lane  *(admitted pro hac vice)*
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York  10166
(212) 294-6700 (Telephone)
(212) 294-4700 (Facsimile)
Email: melkin@winston.com
Email: tlane@winston.com

Attorneys for Defendants
MYXER INC., MICHAEL "MYK" WILLIS;
SCOTT KINNEAR; and RON HARRIS

*(margin text, rotated)* Winston & Strawn LLP / 333 S. Grand Avenue / Los Angeles, CA 90071-1543

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARISTA RECORDS LLC, a Delaware limited liability company; *et al.*,<br><br>        Plaintiffs,<br><br>    vs.<br><br>MYXER INC., f/k/a mVISIBLE TECHNOLOGIES, INC., *et al.*<br><br>        Defendants. | **Case No. CV 08-03935 GAF (JCx)**<br><br>**SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION ON LIABILITY OR, ALTERNATIVELY, A DETERMINATION OF MATERIAL FACTS NOT GENUINELY AT ISSUE; AND IN SUPPORT OF THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Date:      August 23, 2010<br>Time:     9:30 a.m.<br>Place:    Courtroom 740<br>Judge:   The Hon. Gary A. Feess<br><br>Pretrial Conference:  Sept. 20, 2010<br>Trial Date:        Oct. 5, 2010 |

# I.    INTRODUCTION

Pursuant to the Court's July 16, 2010 Order (Dkt. No. 516), Myxer, Inc. ("Myxer") submits this supplemental brief in further opposition to Plaintiffs' ("UMG")[1] Motion for Summary Adjudication ("MSJ"), and in support of the individual defendants'[2] Motion to Dismiss for lack of personal jurisdiction.  (Dkt. Nos. 271, 409) ("MTD").

Since Myxer filed its initial opposition on November 3, 2009 (Dkt. No. 353) ("Opposition"), UMG's MSJ has not improved with time.  In sum:

- there is new case law to support Myxer's affirmative defense for safe harbor under 17 U.S.C. § 512(c) given that Myxer promptly removes alleged infringements upon notice or discovery and is fully compliant with the Digital Millennium Copyright Act ("DMCA") requirements;
- Myxer has obtained additional discovery to support its Fifteenth, Nineteenth, and Twenty-Eighth Affirmative Defenses relating to UMG's alleged ownership of the works at issue; and
- Myxer has now settled with thirteen of the fourteen original plaintiffs in this case, and consequently, has licensing agreements with several of the major record labels, offering further support for Myxer's Fourth and Twenty-First Affirmative Defenses relating to Myxer's substantial non-infringing uses.

Further, there is now even more support for the individual defendants' MTD and the inapplicability of the "effects" test.   For all the reasons discussed in Myxer's Opposition and MTD, and for the additional reasons set forth herein, UMG's MSJ should be denied and the MTD should be granted.

---

[1] Of the fourteen original plaintiffs, only UMG remains.  (Dkt. Nos. 289, 511 & 488).

[2] The individual defendants are Michael "Myk" Willis, Scott Kinnear and Ron Harris.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

## II.    SUMMARY ADJUDICATION FOR UMG MUST BE DENIED

### A.    Recent Caselaw Supports Myxer's Second Affirmative Defense

Because the Internet presents new challenges with respect to questions of copyright infringement and liability, in order to strike a balance between the respective interests, the DMCA was intended "to preserve[] strong incentives for service providers and copyright owners to cooperate to detect and deal with copyright infringements that take place in the digital networked environment" and provide "greater certainty to service providers concerning their legal exposure for infringements that may occur in the course of their activities." S. Rep. No. 105–190, at 1–2, 20 (1998). Toward that goal, Section 512(c) of the DMCA provides a safe harbor to service providers who promptly remove infringements upon notice and meet other requirements of the subsection, like Myxer has here.

In a case relying heavily on *UMG Recordings, Inc. v. Veoh Networks, Inc.*, 665 F.Supp.2d 1099 (C.D. Cal. 2009) and *Perfect 10, Inc. v. CCBill LLC,* 488 F.3d 1102, 1112 (9th Cir. 2007),[3] YouTube recently obtained summary judgment on the grounds that it was entitled to Section 512(c) safe harbor. *Viacom International Inc., et al. v. YouTube, Inc., et al.*, 2010 WL 2532404 (S.D.N.Y., June 23, 2010). In *YouTube*, the plaintiffs—like UMG here—filed a lawsuit seeking a staggering windfall in statutory damages, alleging copyright infringement for files uploaded to YouTube's website by third party users. In *YouTube*, just like in the defendant *Veoh* and defendant Myxer

---

[3] The district court in *UMG Recordings, Inc. v. Veoh,* also relied on *CCBill* in holding that the defendant Veoh was entitled to Section 512(c) safe harbor and therefore was not liable to UMG for any monetary damages. 665 F.Supp.2d 1099 (C.D. Cal. 2009). *Veoh* at 1108 (quoting *CCBill* at 1114.) As the *Veoh* court found, where an OSP must investigate "facts and circumstances" to identify infringing content, there are no "red flags" under Section 512(c)(1)(A)(ii). *Id.; see also Corbis,* 351 F. Supp. 2d at 1108 (test is not what a "reasonable person would have deduced given all the circumstances" but whether the OSP "deliberately proceeded in the face of blatant factors of which it was aware.") [citing 3 Nimmer on Copyright, § 12B.04[A][1], at 12B–49]); H.R. Rep. No. 105–551, pt. 2, at 53, 57 ("[A] service provider need not monitor its service or affirmatively seek facts indicating infringing activity. . .in order to claim this limitation on liability. . .").

2

1    here, the defendant was fully compliant with the DMCA requirements, as it was

2    "uncontroverted" that when the defendant was given notice of suspected infringement,

3    "it removed the material." *Id.* at *10-11("[g]eneral knowledge that infringement is

4    "ubiquitous" does not impose a duty on the service provider to monitor or search its

5    service for infringements."). As the *YouTube* court recognized, it "makes sense" that

6    the burden of identifying infringing material stays with the copyright owner because

7    an online service provider ("OSP") "cannot by inspection determine whether the use

8    had been licensed by the owner, or whether its posting is a 'fair use' of the material, or

9    even whether its copyright owner or licensee objects to its posting." *Id.* at *8-

10   10(*citing Tiffany (NJ) v. eBay, Inc.*, 600 F.3d 93 (2d. Cir. 2010)) (affirming dismissal

11   of trademark claim where the defendant had only generalized knowledge of

12   infringements instead of knowledge of "specific instances of actual infringement").

13   Myxer's Opposition discusses extensively its entitlement to Section 512(c) safe

14   harbor, and the recent *YouTube* decision offers further support for the appropriateness

15   of Myxer's Second Affirmative Defense.[4]

16         **B.    There Are Factual Disputes Regarding UMG's Alleged Ownership of
                    the Copyrights at Issue, Supporting Myxer's Fifteenth, Nineteenth,
17                  And Twenty-Eighth Affirmative Defenses**

18         UMG cannot prove its case if it is not the author of the works at issue, did not

19   receive transfers of the works, or did not receive transfer of the rights in the work that

20   would allow UMG to bring this suit. Ninth Circuit Manual of Model Jury Instructions

---

21   [4] On January 13, 2010, UMG submitted to this Court as "supplemental authority"
22   (Dkt. No. 474) for its MSJ, *Columbia Pictures Indus. Inc. v. Fung*, No. 06 CV 5578,
     2009 U.S. Dist. LEXIS 122661, at *63 (C.D. Cal. Dec. 21, 2009). But unlike the facts
     here, the defendant in *Fung*: (1) hosted a "peer-to-peer" file-sharing site (unlike
23   Myxer's system where Myxer retains the ability to delete files) that was found to
     promote infringing activity; (2) presented no evidence that it had a meaningful
24   copyright policy; and (3) over 90% of the content was infringing according to
     unrebutted evidence. *Fung* presents distinct facts from those here, where there is no
25   evidence that Myxer "promoted" infringing activity; where Myxer's copyright
     policies are comprehensive; and where, even construing the evidence most favorably
26   to UMG, UMG does not allege anywhere near 90% of Myxer's content is allegedly
     infringing, but UMG alleges that a far smaller percentage of alleged infringements
27   have appeared on Myxer. (*See e.g.*, Myxer's Statement of Genuine Issues (Dkt. No.
     399) ("SGI") ¶¶ 10, 189-190).
28

                                              3

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1    (2007 ed.), No. 17.5.  Myxer's Fifteenth Affirmative Defense for fraud on the

2    copyright office is based on a material misstatement, whether willfully or

3    inadvertently, of a fact that, if known, would have caused the Copyright Office to

4    reject the copyright application.  *See Urantia Found. v. Maaherra*, 114 F.3d 955, 963

5    (9th Cir. 1997); 3 Melville B. Nimmer and David Nimmer on Copyright § 7.20[B]

6    (2009).  Myxer's Nineteenth Affirmative Defense for lack of standing is based upon

7    UMG's inability to meet its ownership burden.  Myxer's Twenty-Eighth Affirmative

8    Defense asserts failure to register, given that a plaintiff may not obtain damages where

9    works are unregistered.  *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146,

10   1154 n.1 (9th Cir. 2007);  *Perfect 10, Inc. v. Google, Inc.,* No. CV 04-9484, 2008 WL

11   4217837, at *1 (C.D. Cal. July 16, 2008) (noting damages may be precluded on any

12   unregistered works).

13       On November 30, 2009, after Myxer submitted its Opposition to the MSJ,

14   UMG was ordered to produce all ownership documents for its alleged works in this

15   action within twenty days (Dkt. No. 422).   Based on a review of the ownership

16   documents ultimately produced by UMG, there are significant deficiencies in UMG's

17   ownership production.  As discovery has now closed (*See* Dkt. No. 513), these

18   numerous deficiencies create at the very least factual questions with respect to the

19   validity of UMG's ownership of many of the works at issue, and demonstrate that

20   UMG has failed to carry its burden regarding ownership of these works.[5]

21       First, UMG has not met its burden in establishing that several of its claimed

22   works were properly registered, which supports Myxer's Fifteenth, Nineteenth, and

23   Twenty-Eighth Affirmative Defenses.  Declaration of Erin R. Ranahan ("Ranahan

24   Decl.") ¶¶ 2-4 and Exhs. A-D.  Second, there are errors in many of the alleged

25   ownership agreements produced by UMG, and many of the ownership documents are

---

[5] UMG has agreed to produce for deposition a deponent regarding UMG's alleged ownership of the works at issue on August 13, 2010, where Myxer will continue to investigate UMG's alleged ownership of its claimed copyrights, and may discover further ownership defects to expose.

4

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1  contain incomplete or insufficient chain of title information, further supporting

2  Myxer's Nineteenth Affirmative Defense. *Id.* at ¶¶ 3, 5 and Exhs. E-H.  Third, though

3  registration, and necessarily the actual publication, of a copyright is a prerequisite to

4  an infringement lawsuit (17 U.S.C. § 411), and to obtain certain remedies (17 U.S.C. §

5  412), numerous works at issue were first published *after* the complaint was filed on

6  June 16, 2008, supporting Myxer's Twenty-Eighth Affirmative Defense.   Ranahan

7  Decl. at ¶ 3 and Exh. A; *Cosmetic Ideas, Inc. v. IAC/Interactive Corp*, 606 F.3d 612,

8  614 (9th Cir. 2010) ("§ 411(a)'s registration requirement" . . . "mandates that a

9  copyrighted work be registered before an infringement action can be brought"); *Reed*

10  *Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1241 (2010) (". . . the Copyright Act. . .

11  requires copyright holders to register their works before suing for copyright

12  infringement.").

         **C.**    **Myxer Has Additional Affirmative Defenses That Preclude Summary Judgment[6]**

               **1.**    **Myxer's Fourth Affirmative Defense for Staple Articles of Commerce and Twenty-First Affirmative Defense of Substantial Non-Infringing Uses**

17  Because Myxer's software and services are staple articles of commerce with

18  substantial non-infringing uses, Myxer cannot be held liable for contributory

19  infringement. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 41

20  (1984).  Not only does Myxer feature partner content, including from several of the

21  major record labels, but Myxer has hundreds of thousands of ringtones available that

22  are directly authorized by their copyright holders and millions of others where users

23  have certified that they control the rights.  (SGI ¶¶ 8, 10, 157-158 & 172).

---

[6] Myxer is only addressing certain affirmative defenses herein, but believes it has several additional viable affirmative defenses. *See* Proposed Pretrial Conference Order filed Dec. 16. 2009 (Dkt. No. 450-2) pp. 15-40.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1    Even construing the facts alleged in its MSJ most favorably to UMG, the vast

2  majority of ringtones on Myxer *do not* belong to UMG.[7]  For example, UMG's expert

3  Ellis Horowitz testified that at most, ¼ of the files uploaded to Myxer were allegedly

4  files owned by the UMG Plaintiffs, the Warner Plaintiffs, or the Sony Plaintiffs.

5  (Dkt. No. 367, ¶¶ 6-7; SGI ¶ 10).  This means that admittedly, 75% of the files on

6  Myxer are *not* allegedly infringing or owned by UMG, Warner or Sony.  Considering

7  that all other plaintiffs have now settled with Myxer (including the three other major

8  record labels) and that only UMG remains, UMG must concede that now an even

9  smaller percentage than 25% are alleged to be owned by UMG.  Given these

10  percentages, and Myxer's focus on the long-tail of the music industry (e.g.,

11  independent musicians), Myxer undoubtedly has substantial non-infringing uses. (*See*

12  *e.g.,* SGI, ¶¶ 15, 44, 63, 108, 127).

### III.    RECENT AUTHORITY SUPPORTS GRANTING THE MTD

14    A recent Ninth Circuit opinion serves to further confirm that this Court should

15  grant the individual defendants' MTD, and that UMG cannot satisfy the "effects" test

16  with respect to any of the individual defendants.  *Love v. Associated Newspapers*,

17  Ltd., Case Nos. 07-56008 and 07-56568, 2010 WL 2680922 (9th Cir. 2010).  In *Love,*

18  the plaintiff brought an action in California asserting Lanham Act and related claims

19  against the defendants.  The Ninth Circuit affirmed the district court's dismissal for

20  lack of personal jurisdiction over the defendant BigTime.tv because BigTime.tv did

21  not purposefully direct any relevant intentional acts at California.  While the

22  defendant contacted people in California, "those discussions did not enable or

23  contribute to the . . . activities that actually gave rise to the law suit."  *Id.* at *3.  As the

24  court noted, even if the plaintiff suffered harm in California, and the defendant knew

---

[7] Even some allegedly infringed UMG works were authorized.  For example Schedule A to Plaintiffs' First Amended Complaint, filed August 27, 2009 (Dkt. No. 202) ("FAC") also contains numerous examples of works that were uploaded to Myxer by its authorized partners, such as InGrooves (Ranahan Decl. (Dkt. No. 353-4), Exh. A), who is also UMG's mobile distributor.  This includes, for example, Marvin Gaye, Let's Get it On (FAC at No. 129, p. 45).

6

1  the plaintiff lived in California, such facts were "insufficient to satisfy the effects test"

2  *Id.* As discussed extensively in the MTD and reply in support of the same, UMG

3  points to no act by any of the individual defendants directed at California that was not

4  entirely on Myxer's behalf, or any act directed at California at all that gave rise to this

5  lawsuit. (*See* Dkt. Nos. 271 and 409). Thus, like the plaintiff in *Love,* UMG cannot

6  satisfy the effects test regarding the individual defendants by predicating such on its

7  alleged harm in this state and knowledge that certain record labels might be located in

8  California.

9  **IV.   CONCLUSION**

10        The undisputed facts establish Myxer's entitlement to DMCA safe harbor, and

11  that Myxer has additional viable affirmative defenses that preclude summary

12  judgment.  Thus, UMG's MSJ should be denied in its entirety.  The Court should also

13  reject UMG's effort to haul the individual defendants into this action; they do not have

14  sufficient contacts with California to be subject to personal jurisdiction.  Thus, the

15  Court should grant the MTD.

16

17  Dated:  July 26, 2010                    WINSTON & STRAWN LLP

18

19                                        By: /s/ Erin R. Ranahan

20                                             Michael S. Elkin
                                              Thomas P. Lane
21                                             Erin R. Ranahan
                                              Attorneys for Defendants,
22                                             MYXER INC., MICHAEL "MYK"
                                              WILLIS; SCOTT KINNEAR;
23                                             and RON HARRIS

24

25

26

27

28

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

7